UNITED STATES DISTRICT COURT
for the SOUTHERN DISTRICT OF INDIANA,
INDIANAPOLIS DIVISION

| | |
|---|---|
| ROBERT S. CRAIG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 1:11-cv-1191-JMS-DKL |
| | ) |
| CORIZON, INC., | ) |
| | ) |
| Defendant. | ) |

### ENTRY and ORDER
### on April 12, 2012 Pretrial Conference

This Cause comes before the Court for a telephonic pretrial conference on the parties' advice of a dispute regarding Plaintiff's requests for production. Participating in the conference were Edward E. Hollis and Toni M. Everton, representing Defendant, and Richard L. Darst, representing Plaintiff. The primary dispute centers on Plaintiff's Requests for Production nos. 5 and 6 which request "personnel documents, including training and discipline documents relating to" identified individuals falling into two categories: persons "involved in the termination of Dr. Craig [Plaintiff]," Request no. 5, and persons "comparable to Dr. Craig," Request no. 6. The parties also disagreed regarding the appropriate format for Defendant's production of responsive documents.

### Requests for production

**Request no. 5.** This Request seeks personnel documents relating to Peggy King, Tracy Alderman, and Royce Gibson, all of whom Plaintiff contends were involved in his

1

termination. Ms. King and Ms. Alderman separately imposed disciplines against Plaintiff for incidents occurring some time before his termination. Plaintiff contends that personnel documents relating to these individuals are relevant because their prior discipline was considered in, led to, and/or formed part of the basis for his later termination. Defendant contends that such documents are irrelevant because it terminated Plaintiff for reasons unrelated to the incidents for which Ms. King and Ms. Alderman had disciplined him and they were not involved in the decision to terminate him. The parties agree that Royce Gibson wrote up Plaintiff's termination and was therefore directly involved.

The Court finds that, at this stage, the requested information regarding all three individuals is generally discoverable, depending on the specific information in Defendant's possession, custody, or control and Plaintiff's showing of relevance and materiality.

**Request no. 6.** This Request seeks personnel documents relating to seven younger individuals whom Plaintiff contends were similarly situated to himself, engaged in similar conduct, but did not suffer his fate of termination. During the conference, Plaintiff dropped his request for documents relating to Dr. William Elliott, who was employed by the Indiana Department of Correction at the time and was never employed by Defendant. Defendant also stated that it had no documents regarding Dr. Elliott.

Three of the six remaining individuals — Dr. Hutner, psychologist, and Drs. Munir and Shoot, psychiatrists — were independent contractors engaged by Defendant.

2

Defendant asserts that it does not have a "personnel file" on either of these independent contractors because they were not its employees. Defendant also argues that any evidence regarding these individuals would be irrelevant because, as independent contractors, they were not similarly situated to Plaintiff in that they were not subject to the same work standards, supervision, or procedures as were Plaintiff and Defendant's other employees. At the conference, Plaintiff advanced an additional reason, beyond comparability, why documents regarding the three independent contractors are relevant: ¶ 8 of the *First Amended Complaint and Demand for Jury Trial* [doc. 17] alleges that "[i]n early March, 2010, the Regional Director of Psychiatric Services told one of the nurses working with Dr. Craig that Corizon was planning to fire a doctor who was about 54 years of age and that Corizon was planning to force Dr. Craig to resign." At the conference, Plaintiff contended that the "doctor who was about 54 years of age" was one of the three identified independent contractors and the "Regional Director of Psychiatric Services" who talked to the nurse was Dr. Hinshaw, another of the individuals identified in Request no. 6 and a remote supervisor of Plaintiff. Thus, according to Plaintiff's theory, documents Defendant possesses relating to the three independent contractors might contain or lead to evidence of a general discriminatory motive by Defendant to get rid of older workers and older independent contractors.

The remaining three individuals identified in Request no. 6 are Dr. Hinshaw (identified above) and Drs. Henry and Nance, psychologists. Dr. Nance replaced Plaintiff

3

as Lead Psychologist and Plaintiff wants Defendant's documents relating to her because they might provide evidence of her qualifications, which Plaintiff alleges were fewer than his, *First Amended Complaint* ¶ 12, and because she is similarly situated to himself. Plaintiff wants documents relating to Dr. Hinshaw because she was a remote supervisor of Plaintiff and allegedly expressed an intention by Corizon to force Plaintiff to resign and to terminate an older worker, thus suggesting that Defendant's documents might provide evidence of a specific discriminatory motive behind Plaintiff's termination. Defendant contends that Dr. Hinshaw was not involved in any way with the decision-making regarding Plaintiff's termination. Plaintiff also contended that Defendant might have forced Dr. Hinshaw to resign because of her age, which might make her similarly situated to Plaintiff, who supervised two employees. No specific information was provided regarding Dr. Henry.

The Court finds that, at this stage, the requested information regarding all of the identified individuals, except Dr. Elliott, is generally discoverable, depending on the specific information in Defendant's possession, custody, or control and Plaintiff's showing of relevance and materiality.

**Standards**

While no privilege protects personnel files from discovery, the privacy interests of non-party employees in their personal information which is often maintained by employers have led courts to subject discovery requests for such information to heightened scrutiny.

> Magistrate judges and district courts have broad discretion to limit a request for the discovery of personnel files, in order to prevent the dissemination of personal or confidential information about employees. The court should consider "the totality of the circumstances, weighing the value of the material sought against the burden of providing it," and taking in account society's interest in furthering "the truth-seeking function" in the particular case before the court.

*Brunker v. Schwan's Home Service, Inc.*, 583 F.3d 1004, 1010 (7th Cir. 2009) (citations omitted). In *Gehring v. Case Corp.*, 43 F.3d 340 (7th Cir. 1994), the Court of Appeals affirmed the denial of an employment-discrimination plaintiff's request for personnel files. The district judge had weighed the materiality of the information against the invasion of other employees' privacy and her determination to maintain focus on the plaintiff employee's pled claims and to prevent an expedition through the defendant employer's files to put its personnel policies on trial. "District judges have substantial discretion to make such decisions to curtail the expense and intrusiveness of discovery and trial." *Gehring*, 43 F.3d at 342. Parties often agree that certain information — *e.g.*, Social Security numbers and bank-account numbers in general, and medical and insurance documents depending on the type of discrimination alleged — is irrelevant and can be withheld or redacted before production. But when presented with unresolved disputes, courts demand a convincing showing that the information requested is relevant to a claim or defense in the case. Further, if a court orders the production of sensitive employee information, a protective order controlling the use and dissemination of the sensitive information is often issued as well.

Information maintained by an employer relating to non-party employees might be relevant to show that the employees were similarly-situated to the plaintiff and are, therefore, comparators for purposes of the *McDonnell Douglas* burden-shifting analysis. Because "[t]he similarly situated analysis requires a context-based examination of all relevant factors," *Eaton v. Indiana Dept. of Correction*, 657 F.3d 551, 556 (7th Cir. 2011), the type and number of comparability factors that are relevant is flexible and depends on the particular case at hand, *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007). Generally, employees will be similarly situated if they had the same supervisor, were subject to the same standards, had similar disciplinary histories, had the same job descriptions (duties), or had comparable experiences, educations, and other qualifications, and engaged in the same conduct. *Eaton*, 657 F.3d at 556, 558; *Brunker*, 583 F.3d at 1010; *Humphries*, 474 F.3d at 405. Comparison factors must be material:

> It is routinely stated that similarly situated employees must be "directly comparable to the plaintiff in all material respects, which includes showing that the coworkers engaged in comparable rule or policy violations." Our cases have further refined the inquiry: "all material respects" means comparable experience, education and qualifications, "*provided that the employer took these factors into account* when making the personnel decision in question." A characteristic that distinguishes two employees, regardless of its significance when objectively considered, does not render the employees non-comparable if the employer never considered that characteristic. The purpose of the similarly situated requirement is to provide a basis for a judgment about the fairness of the employer's decision. Factors never considered by the employer cannot provide any insight as to whether the employer's decision was motivated by discriminatory intent.

*Eaton*, 657 F.3d at 559. Information regarding an employee's supervisors can be relevant to the issues of credibility and pretext, and can lead to the identification and location of

other relevant documents or persons who have discoverable information.

**Rulings**

The Court finds that Request nos. 5 and 6 do not seek "personnel files" *per se*, meaning documents only contained in physical or on-line files so labeled, or documents limited to employees. The Requests ask for "personnel documents, including training and discipline documents, relating to" the identified individuals. The Court construes these requests to encompass all documents or materials regularly maintained by Defendant and organized under or accessible by the names of the identified individuals for personnel or human-resources purposes. Training and disciplinary information regarding the identified individuals are included with this scope. In addition, information maintained by Defendant regarding its contracting, hiring, monitoring, reviewing, quality-assurance, and standards required of identified independent contractors is within the scope of the Requests.

The parties shall follow the following procedure regarding Requests nos. 5 and 6:

**1. No later than April 19, 2012**, Defendant shall provide Plaintiff with indices of all documents, or categories of substantially identical types of documents, in its possession, custody, or control that are responsive to Requests nos. 5 and 6 for each of the individuals identified therein (except Dr. Elliott). The indices must include sufficient identifying and descriptive information that Plaintiff can make an informed determination of the probable relevance of the documents to his claims. Because Plaintiff indicated in his position

statement that Defendant need not produce medical or health information, Defendant need not index the individuals' personal or familial medical or health information. The parties are encouraged to propose and to agree to other types or categories of information that shall be exempt from indexing, or need be only categorically described (*e.g.*, insurance, tax, payroll, and leave documents, depending on the anticipated comparison factors). Plaintiff is expected to fully consider and reasonably cooperate in any proposals to narrow the scope of indexing.

**2. No later than April 26, 2012**, Plaintiff shall provide Defendant with a list of the specific documents or categories in the indices that he wants produced. Plaintiff is expected to make a good-faith evaluation and selection and not simply to select all indexed documents. Defendant shall carefully consider any reasonable request by Plaintiff for additional index descriptions.

**3.** Defendant shall review Plaintiff's list of selections and promptly produce the those documents to which it has no objection. As to the listed documents which Defendant objects to producing, the parties shall engage in discussions, including a full explication of each side's legal basis for production and objection, in an attempt to resolve their disputes and/or narrow the issues.

**4. A telephonic status conference is set for Wednesday, May 2, 2012, at 8:30 a.m., EST** to discuss any unresolved issues. Counsel will receive call-in instructions for the conference *via* separate Notice of Electronic Filing.

**5.** If the parties' disputes are not resolved, then Defendant shall file a motion for a

protective order, with supporting brief, **no later than May 8, 2012**. Briefing shall proceed as set forth in S.D. Ind. L.R. 7-1(c).

**6.** If, on review of the briefs, the Court desires to review any of the documents at issue *in camera*, then it will order their submission at that time. The Court will not assume the task in the first instance of examining all of Defendant's documents and attempting to determine which ones might be relevant. Instead, the Court expects Defendant's indices to contain sufficient descriptive information to permit Plaintiff to make meaningful determinations regarding relevance and to present useful arguments to the Court.

The parties shall begin negotiating and drafting a proposed protective order that will govern the use and dissemination of any documents that the Court orders Defendant to produce. The parties' attentions are directed to the recent entries on motions for protective orders that have come before this magistrate judge, cited in the note.[1] The

---

[1] *Brindle v. FedEx Freight*, No. 1:10-cv-1576-JMS-DKL, *Entry on Joint Motion for Protective Order* [doc. 27] (S.D. Ind., April 12, 2012); *Jones v. C & D Technologies, Inc.*, No. 1:11-cv-1431-JMS-DKL, *Order on Defendant's Unopposed Motion for Protective Order* [doc. 64] (S.D. Ind., April 12, 2012); *Blanchar v. Standard Insurance Co.*, No. 1:11-cv-47-RLY-DKL, *Entry on Motion for Agreed Protective Order* [doc. 52] (S.D. Ind., April 6, 2012); *Indiana Charitable Trust for Benefit of Daughters of Charity of St. Vincent de Paul v. Rees-Jones*, No. 1:11-cv-1559-SEB-DKL, *Entry on Joint Motion for Entry of Agreed Protective Order* [doc. 64] (S.D. Ind., April 6, 2012); *Hill-Rom Services, Inc. v. Stryker Corp.*, No. 1:11-cv-458-JMS-DKL, *Entry on Joint Motion for Protective Order* [doc. 103] (S.D. Ind., April 4, 2012); *Brown v. Cinemark USA, Inc.*, No. 1:11-cv-171-WTL-DKL, *Entry on Defendant's Agreed Motion for Protection of Confidential Information* [doc. 36] (S.D. Ind., Jan. 17, 2012); *Boston Scientific Corp.*, No. *Holmes v. National Railroad Passenger Corp.*, No. 1:10-cv-1603-WTL-DKL , *Entry on Joint Motion for Protective Order* [doc. 49] (S.D. Ind., Dec. 1, 2011); *Equal Employment Opportunity Commission v. Dogencorp, LLC*, No. 1:11-cv-755-SEB-DKL, *Entry on Joint Motion for Entry of Protective Order* [doc. 32] (S.D. Ind., Oct. 20, 2011); *Gold Seal Termite and Pest Control Co. v. ILD Telecommunications, Inc.*, No. 1:11-cv-642-JMS-

parties may also review the submitted protective orders in those cases for the terms that the Court did not reject. The parties might want to consider a two-tiered level of protection consisting of confidential information and a more restrictive attorneys'-eyes-only level of protection for more sensitive information. In addition, the parties may consider a requirement that, before designated confidential information may be disclosed to any individual, a prescribed confidentiality agreement must be executed by that individual.

**Production format.** Plaintiff contended that Defendant produced over seven hundred pages of documents in response to all of his Requests but failed to identify or describe what they are or where certain documents begin and end. Defendant responded that it produced the documents exactly as requested and organized them according to Plaintiff's Requests, as Fed. R. Civ. P. 34(b)(2)(E)(I) permits: "A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request . . . ." Defendant stated that it produced hard copies of the documents with divider pages indicating the request for which each set of documents was responsive. Defendant apparently divided and labeled its responses only according to the thirty Requests, not according to any subparts or categories within the individual Requests. Plaintiff indicated that he would file a motion with respect to this issue.

---

DKL, *Entry on Defendant's Motion to Maintain Exhibit Under Seal* [doc. 25] (S.D. Ind., July 19, 2011).

In hopes of avoiding or narrowing this motion practice, the Court advises Defendant that the second option of the Rule requires that produced documents be organized and labeled to correspond to the *categories in the request.* If a Request asks for specific types, kinds, or categories of documents (*e.g.*, manuals, reports, diaries, policies, training documents, discipline documents), then the production must be so identified (*e.g.*, by beginning and ending Bates numbers) according to the types, kinds, or categories included in the Request.[2] Defendant may assert practical objections.

**SO ORDERED.**

Date: 04/17/2012

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution:

Richard L. Darst
COHEN GARELICK & GLAZIER
rdarst@cgglawfirm.com

Edward E. Hollis
Toni M. Everton
FAEGRE BAKER DANIELS, LLP - Indianapolis
edward.hollis@faegrebd.com
toni.everton@faegrebd.com

---

[2] Requests that ask for documents based on their litigative use — *e.g.*, documents that "support" or "refute" particular claims or defenses — need not be so identified. If Defendant produced documents in response to requests for documents that relate to particular claims or that "refer, relate, or in any way pertain to" particular allegations, then it must identify the claims or allegations to which they are responsive.